IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PREMIER ASSOCIATES, INC.,

                **Plaintiff,**

     v.

EXL POLYMERS, INC. f/k/a
NYCORE, INC. and NY-CORE,
INC., a Georgia Corporation;
MARC HERUBIN; STEPHEN
STEELE; and SHAW INDUSTRIES
GROUP, INC., a Georgia
Corporation,

                **Defendants.**

            **1:08-cv-3490-WSD**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Premier Associates, Inc.'s ("Premier" or "Plaintiff") Motion for Clerk's Entry of Default Against Defendant EXL Polymers, Inc. ("EXL") [100], Plaintiff's Motion for Judgment on the Pleadings as to Defendant Shaw Group, Inc.'s ("Shaw") Counterclaims [102], Plaintiff's Motion for Judgment on the Pleadings as to the EXL Defendants' Counterclaims [103], Defendant Shaw's Motion for Summary Judgment [106], Plaintiff's Motion for Summary Judgment Against Defendants Herubin and Steele [109], Plaintiff's Motion for Partial Summary Judgment Against Defendant Shaw

[110], Plaintiff's Motion For Leave to File Corrected Brief [113], and on

Defendant Stephen Steele's Motion for Leave to File a Response [150].[1]

## I.     BACKGROUND

This action arises out of a lease entered into between Plaintiff and Defendant

Nycore, Inc. ("Nycore"), under which Nycore leased Plaintiff's property on

Mendel Drive in Atlanta, Georgia, ("Mendel Site") for use in the production of

products made from recyclable materials, including carpet selvedge purchased

from Defendant Shaw.  During the relevant time period, Defendants Herubin and

Steele served as corporate officers of Nycore.

Plaintiff alleges that during the lease term, Nycore and Shaw "arranged for,

transported, stored and disposed of thousands of tons of carpet waste at the Mendel

Site," (Compl. ¶ 57), and used the Mendel Site as a solid waste dump, (id. at ¶ 60).

On February 11, 2008, a fire burned the Mendel Site to the ground and destroyed a

---

[1] The significant number of motions and cross-motions is a result of the shotgun
pleading Plaintiff filed in this action.  As the Court observed in its Order entered
on July 14, 2009, dismissing a variety of claims asserted against the two individual
Defendants pursuant to the motion they filed, Shaw has elected to deal with the ten
claims asserted against it at this stage of the litigation.  Two of those claims
Plaintiff has had to admit, albeit reluctantly, are unsupported by any evidence.  The
undisciplined and unreasonable assertion of claims, and the unwillingness of a
plaintiff to voluntarily dismiss claims that are not viable, make an over-charged
case even more expensive and less efficient.

large portion of the carpet selvedge.[2]  (Id. at ¶¶ 67, 69.)  Plaintiff contends that, as

a result of the acts and omissions of Nycore, Herubin, Steele, and Shaw, hazardous

waste was discharged at the Mendel Site – before and after the fire – in violation of

federal and state environmental laws and regulations, including the Resource

Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., ("RCRA") and the

Georgia Hazardous Site Response Act, O.C.G.A. § 12-8-90 et seq., ("HSRA").

On January 12, 2008, Premier filed its Complaint in this action.  On January

8, 2009, Shaw filed its Answer and asserted three counterclaims against Premier,

including two claims under the RCRA and a claim under the HSRA.  Shaw claims

that Premier, as the owner of the Mendel Site, is responsible for the environmental

violations that occurred there.

On February 2, 2009, Defendants EXL, Herubin, and Steele filed their

Answer and asserted against Premier a counterclaim for damage to personalty, for

which they claim damages pursuant to O.C.G.A. § 51-10-3 and attorney's fees

pursuant to O.C.G.A. § 51-12-51, and a counterclaim under the RCRA for

contribution.  On July 14, 2009, the Court granted Plaintiff's motion to amend its

---

[2] Premier apparently did not require Nycore to have or did not enforce its having
fire insurance.  After Nycore breached its lease and abandoned the Mendel Site,
Premier left the Mendel Site uninsured.

Complaint to add a breach of contract claim against Nycore[3] and also granted Defendants Herubin and Steele's motion for judgment on the pleadings with respect to Plaintiff's claims for contractual fraud, tortious fraud, negligence, nuisance, waste, and punitive damages.

## II.   DISCUSSION

### A.   Premier's Motion for Default

On November 6, 2009, the Court permitted counsel for Defendant EXL to withdraw from representation and ordered EXL to have its new counsel file an appearance on or before November 25, 2009.  EXL was advised that failure to comply may result in an entry of default.  As of this date, EXL has not advised the Court that it has engaged new counsel and counsel has not appeared on EXL's behalf.

Plaintiff moves for the entry of default against EXL.  Because a corporation may only be represented in court by an attorney, Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985), and because EXL has failed to comply with the Court's November 6, 2009, Order, an entry of default is appropriate.  See LR 83.1E(2)(b)(I).  Premier's motion for entry of default is granted.

---

[3] This additional claim was allowed because it may have been the most obvious claim that should have been asserted.  That it was not included in the original Complaint is an odd oversight.

B.     Plaintiff's Motion for Judgment on the Pleadings on Shaw's
       Counterclaims

Shaw asserts against Premier two counterclaims under the RCRA,

essentially arguing that Premier, as the owner of the Mendel site, is guilty of the

same violations that Premier has asserted against Shaw and that, accordingly,

Premier should shoulder some of the liability.

a.  *Standard of review*

"A motion for judgment on the pleadings is subject to the same standard as

is a Rule 12(b)(6) motion to dismiss." Provident Mut. Life Ins. Co. of Philadephia

v. City of Atlanta, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).  In considering a

motion for judgment on the pleadings, the allegations contained in the complaint

must be accepted as true and the facts and all inferences must be construed in the

light most favorable to the nonmoving party.  See Hawthorne v. Mac Adjustment,

Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  Ultimately, the complaint is required

to contain "enough facts to state a claim to relief that is plausible on its face."  Bell

Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  To state a claim to relief

that is plausible, the plaintiff must plead factual content that "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Plausibility" requires

more than a "sheer possibility that a defendant has acted unlawfully," and a

complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557).

     b. *Standing*

Premier argues that the Court lacks jurisdiction over Shaw's RCRA counterclaims because Shaw failed to assert its standing under the RCRA. Premier argues that Shaw failed to allege that it suffered an injury-in-fact.

RCRA is a comprehensive environmental statute designed to make certain that solid and hazardous wastes are not disposed of in a manner harmful to the public health or the environment. See 42 U.S.C. § 6902(a). To meet these objectives, RCRA regulates the generation, handling, treatment, storage, transportation, and disposal of solid and hazardous wastes. See 42 U.S.C. §§ 6922-25. To ensure enforcement of the RCRA, Congress conferred enforcement power upon affected United States citizens. See 42 U.S.C. § 6972(a)(1)(B).

A plaintiff that brings a citizen-suit under the RCRA must have standing to assert a claim. See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1002 (11th Cir. 2004). To demonstrate standing, a plaintiff must meet three requirements:

> First and foremost, there must be alleged (and ultimately
> proved) an injury in fact – a harm suffered by the plaintiff that

> is concrete and actual or imminent, not conjectural or
> hypothetical.  Second, there must be causation – a fairly
> traceable connection between the plaintiff's injury and the
> complained-of conduct of the defendant.  And third, there must
> be redressability – a likelihood that the requested relief will
> redress the alleged injury.  This triad of injury in fact,
> causation, and redressability constitutes the core of Article III's
> case-or-controversy requirement, and the party invoking federal
> jurisdiction bears the burden of establishing its existence.

Id. at 1003.

Shaw argues that it has standing to assert its counterclaims because it faces

an imminent and identifiable harm that results from Premier's actions at the

Mendel Site.  Specifically, Shaw alleges that Premier caused or contributed to the

RCRA violations that Premier asserts against Shaw and, accordingly, if Shaw is

liable to Premier, then Premier also is liable to Shaw.  Premier argues that Shaw's

potential liability in this lawsuit cannot be considered an injury under the RCRA

sufficient to confer standing on Shaw to bring a citizen-suit.  The Court agrees.

Shaw acknowledges that the imminent harm it allegedly faces arises *only*

from the possibility of being found liable in this action.  Shaw does not contend it

was injured by Plaintiff's conduct allegedly creating the environmental conditions

at the Mendel Site.  Shaw does not argue that it would have had standing to bring

independent RCRA claims against Premier for the alleged violations at the Mendel

Site.  Indeed, Shaw does not allege it has yet suffered an actual injury and does not

allege it has property near the Mendel Site.  That is, Shaw does not claim that the environmental conditions at that location do not have a legally-cognizable impact on Shaw.  Cf. Parker, 386 F.3d at 1003 (finding adequate an allegation that plaintiff's property was contaminated by migration of solid waste from adjacent disposal facility).  Shaw seems to take the position that although it lacks standing to assert *independent* RCRA claims against Premier, it has standing to assert contingent RCRA counterclaims as a result of Premier's attempt to hold Shaw liable in this action.  Shaw does not offer any authority to support this novel position, and the case law compels the Court to a contrary conclusion.

Shaw's argument – that if Shaw is liable under the RCRA, Premier must be liable as well – is in essence a claim for contribution.  Shaw contends that Premier caused, or at least contributed to, the RCRA violations at the Mendel Site and, accordingly, Premier should be held accountable for its share of any liability. Claims for contribution and indemnity are not available under the RCRA, as Shaw acknowledges.  See, e.g., Meghrig v. KFC Western, Inc., 516 U.S. 479 (1996); Davenport v. Neely, 7 F. Supp. 2d 1219 (M.D. Ala. 1998).  Shaw argues that its counterclaims seek only injunctive relief – aimed at properly imparting to Premier the liability attributable to it – by requiring Premier to remediate the Mendel Site. Whether Premier is partially responsible – and thus partially liable – for RCRA

violations, however, has no bearing on whether *Shaw* has standing to bring a citizen-suit against Premier to ensure that Premier bears responsibility for the RCRA violations Premier caused.

Shaw is also incorrect that its counterclaims are the only available mechanism to properly allocate liability under the RCRA in this action. Congress gave district courts broad power under RCRA "to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes." United States v. Price, 688 F.2d 204, 214 (3d Cir. 1982); see 42 U.S.C. § 6972(a). Responsible defendants do not need to be held jointly and severally liable when the harm can be separated, and in cases where a citizen-suit *plaintiff* is also responsible for the RCRA violations at issue, the court can fashion appropriate equitable relief to ensure that liability is properly allocated. See, e.g., Aurora Nat. Bank v. Tri Star Marketing, Inc., 990 F. Supp. 1020, 1034 (N.D. Ill. 1998) ("While joint and several liability may be appropriate if the harm is indivisible . . . where the harm can be separated, liability must be allocated accordingly."); Bayless Inv. Trading Co. v. Chevron U.S.A., 1994 U.S. Dist. LEXIS 12190 (D. Ariz. May 26, 1994) (noting that property-owner plaintiff was, as a matter of law, a contributor to the contamination and responsible for at least some percentage of the

contamination and, as a result, equity required plaintiff be partially responsible for clean-up efforts).

The Bayless case is instructive.  The court in that case held that the citizen-suit plaintiff, as a property owner, had, as a matter of law, "contributed to" the contamination of the property and could not shift the burden of proof of causation to the defendants.

> To shift the burden of proof in a case such as this would allow landowners to lease property to the most heinous of polluters and simply close their eyes.  Once it comes time to clean up the property the landowner, statutorily liable for the remediation, would be able to shift the burden of proof with regard to responsibility and rid himself of the traditional plaintiff's burden.  Such a rule encourages landowners to manage their leaseholds irresponsibly and cannot be fostered by this court – especially where the owner of the property directly profits from the contamination-causing activity.

Bayless, 1994 U.S. Dist. LEXIS, *27-28.  Shaw argues that Premier engaged in the conduct that the Bayless court cautioned against by leasing the Mendel Site, and profiting from the arrangement, without properly managing or monitoring the environmental conditions there.  The Bayless court also noted that:

> since Bayless is clearly a potential defendant pursuant to RCRA, allowing it to shift the burden of proof would create a situation where it benefits simply from racing to the courthouse ahead of the other potential defendants.  Had an environmental group, an adjacent landowner, or any other "private attorney general" brought a RCRA suit against *all* potential defendants, Bayless, as owner . . . , most certainly could have been joined

> with all of the defendants it has named.  This being the case,
> this court cannot allow Bayless to rid itself of the burden of
> proof it would have as a defendant had another party brought
> the claim . . . .

Id. at. *28.  In this case, Shaw argues that Premier, as the owner of the Mendel Site

who knowingly encouraged Nycore to lease the property but failed to conduct

appropriate due-diligence, is itself a responsible party for the contamination at the

Mendel Site.  Shaw argues that Premier should not be permitted to relieve itself of

its own liability under the RCRA simply because it first filed this citizen-suit and

that any equitable relief the Court fashions should account for Premier's role in the

contamination of the Mendel Site.  These arguments may properly be raised in

defense to the RCRA claims Premier has asserted against Shaw, and bear on the

nature of the equitable relief to which Premier may be entitled.  Shaw's equitable

arguments, however, do not relate to the question of whether Shaw has standing to

assert RCRA counterclaims against Premier.

Because Shaw has not alleged facts to support that it faces an injury-in-fact

under the RCRA, Shaw has not demonstrated that it has standing to assert RCRA

counterclaims against Premier, and Premier's motion for judgment on the

pleadings as to the RCRA counterclaims Shaw has asserted is required to be

granted.

c. *RCRA notice requirements*

Premier next argues that Shaw failed to comply with the statutory notice requirements that are prerequisite to asserting RCRA claims and that, accordingly, Shaw's RCRA counterclaims must be dismissed.  Although the Court has already determined that Shaw lacks standing to assert these claims, the Court addresses Premier's notice argument for the sake of completeness.

A citizen-suit asserting a claim under 42 U.S.C. § 6972(a)(1)(A) requires sixty-days (60) notice to the party against whom the suit is brought.  42 U.S.C. § 6972(b)(1)(A) provides:

> No action may be commenced under subsection (a)(1)(A) of this section—(A) prior to 60 days after the plaintiff has given notice of the violation to— (i) the [EPA] Administrator; (ii) the State in which the alleged violation occurs; and (iii) to any alleged violator of such permit, standard, regulation, condition, requirement, prohibition, or order[.]

42 U.S.C. § 6972(b)(1)(A).  Claims asserted under § 6972(a)(1)(B) require ninety-days (90) notice.  See 42 U.S.C. § 6972(b)(2)(A).  The Supreme Court has held that these notice requirements are "mandatory conditions precedent to commencing suit under the RCRA citizen suit provision; a district court may not disregard these requirements at its discretion."  Hallstrom v. Tillamook County, 493 U.S. 20, 31, (1989).

It is undisputed that Shaw did not provide notice to Premier of either of its two RCRA counterclaims.  Premier argues that, absent the required statutory notice, the Court lacks subject-matter jurisdiction over Shaw's counterclaims.  Shaw argues that the statute only requires notice before a *plaintiff* commences a citizen-suit, and that in this case Premier had already provided "notice" when it asserted RCRA claims against Shaw.  Shaw argues it would be superfluous for it to be required to provide its own notice.

Shaw relies on City of Bangor v. Citizens Communications Co., 2006 WL 2516976 (D. Me. 2006).  In Citizens, the City of Bangor filed a citizen-suit under the RCRA and provided the required statutory notice.  Citizens filed counterclaims under the RCRA but did not comply with the notice requirements.  The court held that a defendant in those circumstances did not need to provide notice to assert RCRA counterclaims because the plain language of the statute requires only that a "plaintiff" provide notice to commence a suit and requiring a delay period before counterclaims could be asserted would run afoul of the Federal Rules of Civil Procedure.  The Citizens court reasoned that requiring notice and delay in accordance with § 6972(b)(2)(A) would preclude a defendant from including an RCRA counterclaim in a timely-filed answer.  2006 WL 2516976 at * 4.  The court held that compliance with the notice and delay provisions was required only when

an RCRA action is commenced (that is, initiated by a plaintiff) and the same

mandatory condition precedent did not apply to RCRA counterclaims filed in

response to an RCRA claim contained in the initial complaint.  Id.  See also AM

Int'l v. Datacard Corp., DBS, 106 F.3d 1342, 1352 (7th Cir. 1997) (Ripple, J.,

concurring) (noting that although the plain language of § 6972(b)(2)(A) is

jurisdictional, it can be read to exclude compulsory counterclaims); but see

Portsmouth Redevelopment and Hous. Auth. v. BMI Apartments, 847 F. Supp 380

(E.D. Va. 1994) (holding that notice requirements were jurisdictional and

applicable to counterclaims).  The Citizens court also observed that applying the

notice requirements to RCRA counterclaims filed in response to an already-

commenced RCRA citizen-suit

> serves no discernable purpose.  Generally, requiring notice and
> delay before the commencement of a RCRA citizen suit serves
> two goals: (1) "notice allows Government agencies to take
> responsibility for enforcing environmental regulations, thus
> obviating the need for citizen suits" and (2) "notice gives the
> alleged violator 'an opportunity to bring itself into complete
> compliance with the Act and thus likewise render unnecessary a
> citizen suit.'"  Hallstrom, 493 U.S. at 29 (citations omitted).
> Having already received notice from a plaintiff, additional
> notice to government agencies in connection with the filing of a
> RCRA counterclaim would simply be duplicative.  With respect
> to the second goal, suffice it to say that notice to a plaintiff,
> who has already commenced a citizen suit, is unlikely to
> prompt that plaintiff to bring itself into complete compliance
> with RCRA and then decide to drop the citizen suit it has
> already commenced.

2006 WL 2516976 at *4.  The Court finds this reasoning persuasive and concludes that Shaw was not required to comply with the RCRA notice requirements before asserting its RCRA counterclaims in this action.  Premier's motion for judgment on the pleadings on that basis is denied.

       d.  *Contribution under HSRA*

Shaw also asserts a counterclaim against Premier under the Georgia HSRA. In the event that Shaw is found liable to Premier on the HSRA claim Premier has asserted against Shaw, Shaw seeks a declaration that Premier is liable to Shaw for indemnity and contribution.

Premier argues that the evidence does not support the HSRA claim it asserted against Shaw and, therefore, Shaw's HSRA claim against Premier also must fail as a matter of law.[4]  (Pl.'s Reply Br. at 6-7.)  The Court may not make factual findings on Premier's motion for judgment on the pleadings and must construe all inferences in favor of the non-movant.  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  However, in light of the conditional

---

[4] Premier states that the Georgia Department of Natural Resources Environmental Protection Division HSRA Program "completed its evaluation of the Mendel Site and issued a No Listing Letter, stating that the property would not be listed on the [Hazardous Site Inventory]. . . . Because Plaintiff's HSRA claim is not supported by the evidence at this time, Defendant Shaw's Counterclaim under HSRA must similarly fail."  (Pl.'s Reply Br. at 6-7.)

nature of Shaw's HSRA counterclaim against Premier and Premier's explicit

abandonment of its HSRA claim against Shaw, the Court dismisses both parties'

HSRA claims from this action.

   C.   <u>Plaintiff's Motion for Judgment on the Pleadings on EXL Polymers,
        Herubin, and Steele's Counterclaims</u>

   Defendants EXL, Herubin and Steele assert against Premier a counterclaim

for damage to personalty, for which they claim damages pursuant to O.C.G.A. §

51-10-3 and attorney's fees pursuant to O.C.G.A. § 51-12-51.  They also assert a

second counterclaim under the RCRA for contribution.  Premier moves for

judgment on the pleadings, arguing these Defendants failed to state a claim on

which relief can be granted.[5]  Defendants EXL and Herubin did not respond to

Premier's motion.[6]

      a.  *Counterclaim for damage to personalty*

   Premier argues that Defendants EXL, Herubin, and Steele failed to allege

facts sufficient to support a counterclaim for damage to personalty under O.C.G.A.

---

[5] Defendant Steele argues that Premier's motion for judgment on the pleadings is
untimely.  The Joint Proposed Scheduling Order, entered on September 9, 2009,
provides that "all dispositive motions, including but not limited to Motions for
Summary Judgment, shall be filed on February 17, 2010."  Premier's motion for
judgment on the pleadings was filed on that date and is therefore timely.

[6] Under the local rules, the motion is deemed unopposed by these Defendants.  LR
7.1B, NDGa.

§ 51-10-3.  That statute provides: "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered."

Premier argues that Defendants' allegations do not even indicate what personal property is alleged to have been damaged by Premier.  Premier contends that the only property at issue is the Mendel Site, which Premier owns, and the carpet selvedge, the ownership of which Defendants have alleged was transferred to Premier when Defendants vacated the Mendel Site in February 2007.  (See EXL Answer ¶ 24.)  Defendant Steele does not directly address Premier's argument, but states only that he hopes to "amplify" his counterclaim at a later time.

The Court concludes that Defendants' counterclaim fails to contain "enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S. Ct. at 1974, or to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 129 S. Ct. at 1949, and therefore Defendants have failed to state a counterclaim on which relief may be granted.  In light of Defendants failure to address or, in the case of Defendants EXL and Herubin, to even respond to, Premier's argument, the Court also concludes Defendants have abandoned their counterclaim for damage to personalty.  See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir.2001) (finding

claim abandoned when argument not presented in initial response to motion for summary judgment); <u>Bute v. Schuller International, Inc.</u>, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned).  Premier's motion for judgment on the pleadings on Defendants' counterclaim for damage to personalty is granted.

> b. *RCRA counterclaims*

Premier raises the same standing and statutory notice arguments that it raised in moving for judgment on Shaw's counterclaims, namely that Defendants EXL, Herubin, and Steele failed to allege an injury-in-fact under the RCRA and failed to provide the proper notice required to assert an RCRA claim.  The Court has already concluded that a defendant asserting RCRA counterclaims in response to an RCRA action already commenced does not need to comply with the statutory notice provisions.  With respect to standing, Defendant Steele adopts the same argument raised by Shaw, specifically, that his potential liability in this lawsuit is sufficient to confer standing to assert a claim under the RCRA.  The Court has already rejected this argument, and, accordingly, concludes that Defendants EXL, Herubin, and Steele do not have standing to assert a counterclaim under the RCRA. Premier's motion for judgment on the pleadings on these Defendants' RCRA counterclaims is required to be granted.

c.  *HSRA contribution counterclaim*

As it did in response to Shaw's HSRA counterclaim, Premier argues that the evidence does not support the HSRA claim it asserted against EXL, Herubin, and Steele and, therefore, these Defendants' HSRA claim against Premier also must fail as a matter of law.  (Pl.'s Reply Br. at 9-10.)  Again, in light of the conditional nature of the Defendants' HSRA counterclaim against Premier and Premier's abandonment of its HSRA claim against these Defendants, the Court dismisses both sets of HSRA claims from this action.

D.    Shaw's Motion for Summary Judgment

Premier asserts against Shaw claims for: (i) violating the solid waste handling provision of the RCRA, 42 U.S.C. § 6972(a)(1)(A), (Count I); (ii) violating the hazardous waste handling provision of the RCRA, 42 U.S.C. § 6972(a)(1)(A), (Count II); (iii) creating an imminent and substantial endangerment in violation of 42 U.S.C. § 6972(a)(1)(B), (Count III); (iv) a Georgia HSRA claim (Count IV); (v) tortious fraud (Count VII); (vi) negligence (Count VIII); (vii) negligence per se (Count IX); (viii) nuisance (Count X); (ix) punitive damages (Count XII); and (x) attorney's fees (Count XIII).  Shaw moves for summary judgment on all of Premier's asserted claims.

The Court observes at the outset that Premier concedes that the evidence does not support the claims it asserted under 42 U.S.C. § 6972(a)(1)(A) and the Georgia HSRA, and, accordingly, the Court finds that Premier has abandoned Counts II and IV against Shaw.[7]  Shaw's motion for summary judgment with respect to these counts is granted.

      a.  *Standard of review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

---

[7] The Court also concluded that Premier has abandoned these claims against Defendants EXL, Herubin, and Steele.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

> b.  *RCRA claim (solid waste) (Count I)*

Shaw argues that the carpet selvedge it delivered to Nycore was not "solid waste" and, accordingly, Shaw cannot be liable for violating solid waste handling regulations.

Georgia has implemented the RCRA's solid waste management requirements through a comprehensive plan set forth by the Georgia Comprehensive Solid Waste Management Act ("GCSWMA").  The GSCWMA provides:

> "Solid waste" means any garbage or refuse; sludge from a
> wastewater treatment plant, water supply treatment plant, or air
> pollution control facility; and other discarded material including
> solid, semisolid, or contained gaseous material resulting from
> industrial, commercial, mining, and agricultural operations and
> community activities, but does not include recovered materials;
> . . .

O.C.G.A. § 12-8-22(33).  Georgia regulations also provide: "[r]ecovered materials

and recovered materials processing facilities are excluded from regulation as solid

wastes and solid waste handling facilities."  Ga. R. & Regs. § 391-3-4-.04(7)(a).

Shaw argues that the carpet selvedge it transferred to Nycore was a "recovered

material" and thus the RCRA solid waste requirements do not apply in this case.

To be considered a recovered material, "the material must have a known use,

reuse, or recycling potential; must be feasibly used, reused, or recycled; and must

have been diverted or removed from the solid waste stream for sale, use, reuse, or

recycling, whether or not requiring subsequent separation or processing."  Ga. R.

& Regs. § 391-3-4-.04(7)(a); see also O.C.G.A. § 12-8-22(25).  Materials that are

accumulated speculatively, however, are defined as solid waste and must comply

with all regulations.  Ga. R. & Regs. § 391-3-4-.04(7)(b).  The regulations define

materials that are accumulated speculatively as follows:

> A recovered material is not accumulated speculatively if the
> person accumulating it can show that there is a known use,
> reuse, or recycling potential for the material, that the material
> can be feasibly sold, used, reused, or recycled and that during

> the preceding 90 days the amount of material that is recycled,
> sold, used, or reused equals at least 60 percent by weight or
> volume of the material received during that 90-day period and
> 60 percent by weight or volume of all material previously
> received and not recycled, sold, used, or reused and carried
> forward into that 90-day period.

Id. at § 391-3-4-.04(7)(c).

It is undisputed that the carpet selvedge Shaw produced can feasibly be used, reused, or recycled, including by being recycled into "boards, park benches, fiber linings for insulated coats, or used as a waste-to-energy fuel." (Shaw's Statement of Material Facts ¶ 6.) Premier argues that these potential uses for carpet selvedge in general are insufficient to demonstrate that the particular carpet selvedge at the Mendel Site could be used, reused, or recycled and that, accordingly, Shaw has not demonstrated that the carpet selvedge at the Mendel Site constitutes a "recovered material." Premier notes that its expert testified that he had not found anyone who wanted to use or reuse the carpet selvedge at the Mendel Site.

The Court rejects Premier's myopic application of the regulations relating to recovered materials. The question is whether the material has a known use, reuse, or recycling potential and whether it *feasibly* can be used. The undisputed facts demonstrate that carpet selvedge has known recycling potential and can be feasibly recycled and reused. Premier's argument that the evidence does not show that the particular carpet selvedge at the Mendel Site has such potential is, to put it

charitably, unconvincing in light of the evidence regarding the uses for carpet selvedge generally.  Premier does not offer any evidence that the selvedge at the Mendel Site is not or is not feasibly useable, reusable, or recyclable.  There is no basis to conclude that the carpet selvedge in this case is any different from carpet selvedge generally.  Premier's argument that the carpet selvedge at the Mendel Site was not in fact reused or recycled simply does not bear on whether it had the *feasible* potential to be reused or recycled.

Premier next argues that the delivery of carpet selvedge to the Mendel Site could not constitute diversion from the solid waste stream because it now needs to be disposed of in a landfill.  Premier argues that a diversion, to qualify under Ga. R. & Regs. § 391-3-4-.04(7)(a), must be complete, that is, the materials must actually be reused or recycled to constitute the "recovered materials" to which the § 391-3-4-.04(7)(a) exclusion applies.  Premier's analysis is illogically myopic. The fact that Nycore failed to recycle the carpet selvedge after Shaw had transferred it to Nycore does not bear on whether *Shaw* diverted the carpet selvedge from its solid waste stream for the purpose of reuse or recycling.  It is undisputed that Shaw transferred the carpet selvedge from its waste stream and provided it to Nycore for reuse and recycling, thus diverting the material from Shaw's waste stream.  Indeed, the selvedge would have remained in the waste

stream except for the environmental decision to allow it to be reused or recycled to avoid the unproductive and environmentally undesirable placing of it in a landfill or disposal dump.  Premier's apparent position is that Shaw had some continuing obligation or legal responsibility to monitor Nycore and confirm that recycling had indeed occurred.  The Court finds that to be an unreasonable application of the regulations regarding recovered materials.[8]  Once Shaw diverted the carpet selvedge from its waste stream and transferred the materials to Nycore for reuse or recycling, the carpet selvedge constituted a "recovered material."  Absent evidence that the selvedge no longer could feasibly be used, reused, or recycled, it did not lose its status as a "recovered material" simply because Nycore failed to use, reuse, or recycle it after Shaw had transferred the selvedge to Nycore from Shaw's solid waste stream.[9]

---

[8] The record also indicates that once Shaw learned that Nycore was no longer operating and attempting to reuse the carpet selvedge, Shaw ceased shipping carpet selvedge to Nycore.

[9] The position advanced by Premier would lead to unreasonable and perhaps even bizarre commercial results.  For example, if a large manufacturer had reusable, recyclable selvedge and sold it to an established, reputable recycler that, due to some catastrophic event caused it to be unable to process the diverted product, the seller would have an obligation then to dispose of the product because it had not actually been diverted for reuse or recycling.  Plaintiff's argument would also create an intolerable ambiguity.  Could a product not qualify for diversion if it was not reused or recycled within some period of time even though it was anticipated that at some point, maybe later than Plaintiff thinks should be allowed, that it

Premier finally argues that the carpet selvedge was accumulated speculatively and therefore does not constitute a "recovered material."  Shaw argues that title to the carpet selvedge was transferred to Nycore and thus Nycore, not Shaw, is obligated under the regulations to demonstrate that it was not accumulating the carpet selvedge speculatively.

The regulations provide that a "recovered material is not accumulated speculatively *if the person accumulating it* can show" certain criteria are met.  Ga. R. & Regs. R. 391-3-4-.04(7)(c) (emphasis added).  The regulation regarding speculative accumulation applies, by its express terms, to Nycore and not to Shaw. Premier has not demonstrated a basis for holding Shaw liable for speculative accumulation of carpet selvedge.  Shaw concedes that the carpet selvedge may have become "solid waste" after it was transferred to Nycore, if in fact Nycore accumulated it speculatively, but argues that this does not create liability on the part of Shaw.  The Court agrees.  The regulations require one who is speculatively accumulating a "recovered material" to comply with all solid waste handling regulations. Ga. R. & Regs. § 391-3-4-.04(7)(b).  As discussed above, however,

---

would be reused or recycled?  The uncertainty and ambiguity created by Plaintiff's interpretation is unreasonable.  The regulation by its express terms unambiguously allows a product to be excepted under Ga. R. & Regs. § 391-3-4-.04(7)(a) when it is diverted for use and recycling.

this does not impose liability on Shaw, who indisputably was not speculatively

accumulating carpet selvedge.[10]

Because Shaw's carpet selvedge was a recovered material, Shaw did not

engaged in the handling or "open dumping" of a solid waste, and Shaw's motion

for summary judgment on Premier's RCRA claim related to solid waste (Count I)

is required to be granted.

     c.  *RCRA claim (imminent and substantial endangerment) (Count III)*

Premier asserts against Shaw a claim under the RCRA for imminent and

substantial endangerment.  Shaw moves for summary judgment on this claim,

arguing that Premier has not offered any evidence that the carpet selvedge at the

Mendel Site presents imminent or substantial harm to health or the environment.

---

[10] The Court also observes that Shaw had an arrangement with Nycore's predecessor, based in Minnesota, to recycle carpet selvedge and when the recycling facility was relocated to Georgia, Shaw continued to divert carpet selvedge to Nycore's location at the Mendel Site.  This is not a case, as Premier seems to suggests, where Shaw simply transferred carpet selvedge to an unknown enterprise and merely hoped the diverted materials would be recycled.  It is also worth observing that Al Forman, Premier's CEO, personally invested in Innovations, Inc., which in turn was an investor in Nycore.  Although in reaching its decision today, the Court does not rely on any finding of a commercial relationship between Premier and Nycore to jointly profit from recycling carpet selvedge, the Court recognizes that this is not a case where Premier was caught unaware when Shaw's carpet selvedge was diverted there or was unaware of the nature and viability of Nycore's proposed recycling operation.

Premier offers the affidavit of its expert, Charles H. MacPherson, Jr., who opines that:

> There is still an imminent and substantial endangerment to human health or the environment at the Site based on the following factors: [1] the large volume of waste materials remaining on the Mendel Site; [2] the extremely limited number of samples (four) used to initially characterize this waste stream and; [3] the detection of numerous COCs and hazardous compounds in those four samples; [4] the unknown damage the fire has caused to the waste carpet, as well as potential hazardous materials that maybe [sic] present underneath these remaining waste materials.

(MacPherson Aff. ¶ 17.)  Shaw objects to the Court's consideration of MacPherson's opinion regarding "imminent and substantial endangerment" because MacPherson did not offer any opinion on this topic in his expert report or rebuttal expert report and Rule 26(a) of the Federal Rules of Civil Procedure require an expert's written report to contain a complete statement of the opinions the expert will express.  Shaw also objects that MacPherson's opinion on this topic is conclusory and speculative.  The Court agrees.

Rule 26(a) requires a party to present an expert report disclosing all of the opinions the expert intends to present and the basis for the opinions.  Our local rules specifically require a party to "designate [its] expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if desired, to name its own expert witness sufficiently in advance of the close

of discovery . . . ." LR 26.2C, NDGa.  The MacPherson opinion regarding imminent and substantial endangerment was not indicated in any report required by Rule 26(b) and Local Rule 26.2C and it is thus not considered by the Court.  Even if it were considered, the opinion is not competent or admissible because it is speculative and conclusory.

MacPherson's late-disclosed and speculative opinion on the alleged imminent and substantial endangerment at the Mendel Site, even if allowed, simply does not present sufficient factual content to support the conclusions that MacPherson adopts or on which a reasonable jury could conclude that the potential harm at issue rises to the level of serious endangerment.  The Court concludes Premier has failed to raise a material issue of fact as to whether there is a threatened or potential harm at the Mendel Site, and Shaw's motion for summary judgment on Premier's claim under 42 U.S.C. § 6972(a)(1)(B) (Count III) is required to be granted.[11, 12]

---

[11] Premier also argues that the presence of accumulated carpet selvedge at the Mendel presents a fire hazard, but does not offer any evidence, authority, or support that this hazard is an imminent and substantial endangerment governed by 42 U.S.C. § 6972(a)(1)(B).  The Court fails to see how such a fire hazard differs from that presented by any carpet or other product ordinarily and properly stored in a warehouse or other appropriate place.

### d. *Tortious fraud (Count VII)*

Premier asserts that Shaw represented that it offered to assist Premier in removing the carpet selvedge from the Mendel Site and then failed to do so. Premier asserts a claim for fraud against Shaw for this allegedly false representation.  Shaw moves for summary judgment on Premier's fraud claim, arguing that Premier has inadequately pleaded a claim for fraud, that there is no evidence that Shaw acted with the intent to deceive Premier, and that Premier admits that it was aware that the Shaw representative who made the representation to Premier did not have the authority to commit Shaw to performing any remedial work at the Mendel Site.[13]

---

[12] It also is telling that the Georgia Environmental Protection Division, after reviewing Premier's site test results, did not order any corrective action at the Mendel Site and declined to list the location on its Hazardous Site Inventory.

[13] In its response to Shaw's summary judgment motion, Premier attempts to expand the scope of its fraud claim asserted against Shaw.  Premier argues that Shaw "acted in concert with Defendants Nycore, Steele and Herubin and participated in the illegal activities at the Mendel Site."  (Resp. Br. at 23.)  Premier then argues that Nycore made various misrepresentations to Premier and that Shaw had knowledge of these alleged misrepresentations.  (Id. at 24.)  Premier's Complaint, however, does not set forth these additional fraud allegations with any particularity, as required by Federal Rule of Civil Procedure 9(b).  Shaw understandably objects to responding to a moving target.  The requirement that fraud be pleaded with particularity is aimed at avoiding precisely this kind of situation.  The Court therefore focuses only on the alleged misrepresentation actually alleged in Count VII of Premier's Complaint, namely, that Shaw represented that it would assist Premier in cleaning the Mendel Site.

Under Georgia law, the tort of fraud requires that the plaintiff prove five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) damages. J.E. Black Constr. Co., Inc. v. Ferguson Enters., Inc., 284 Ga. App. 345, 347 (2007). Rule 9(b) of the Federal Rules of Civil Procedure sets forth specific requirements for alleging fraud. Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); see also United States v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002). "The notion [of the Rule] is that a heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 31 (3d. ed. 2004). "A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made, in what documents or oral representations they were made, who made the statements, the time and place the statements were made, the content of the statements, the manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud." Carpenters Health & Welfare Fund v. Coca-Cola Co., 321 F. Supp. 2d 1342, 1347-48 (N.D. Ga. 2004). Essentially, Rule 9(b) requires plaintiffs in a fraud case to specify the "who, what,

where, when, and how" of the alleged fraud.  In re World Access, Inc., 119 F.

Supp. 2d 1348, 1353 (N.D. Ga. 2000).

Premier's fraud allegation against Shaw falls woefully and fatally short of

the pleading requirements of Rule 9(b).  Premier does not allege who made the

alleged misrepresentation, that he knew it was false, or that it was made with the

intent to deceive Premier.  Rather, Premier alleges essentially that Shaw reneged

on an offer extended to Premier.  Presumably recognizing that this promise was

unenforceable as a matter of contract law, Premier attempts to assert a fraud claim,

but fails properly to plead one.  Fraud "cannot consist of mere broken promises,

unfulfilled predictions or erroneous conjecture as to future events."  Infrasource,

Inc. v. Hahn Yalena Corp., 272 Ga. App. 703, 707-08 (2005).  Shaw's motion for

summary judgment on Count VII is granted.

a. *Negligence (Count VIII), Negligence Per Se (Count IX), & Nuisance (Count XI)*

Because the Court has concluded there is no genuine issue of material fact

supporting a finding that Shaw violated any solid or hazardous waste regulations,

Premier's claim that Shaw breached its duty to comply with applicable laws and

regulations necessarily fails.  Because this duty is the basis for Premier's claims for

negligence and negligence per se, Shaw's motion for summary judgment on

Counts VIII and IX is granted.  Premier's claim for nuisance also is premised on

Shaw's alleged improper disposal of solid and hazardous waste, which the Court has rejected.  Summary judgment in favor of Shaw on this claim too is required to be granted.

b.  *Punitive damages (Count XII) & Attorney's fees (Count XIII)*

Having granted summary judgment on each of the substantive claims Premier asserts against Shaw, Premier's claims for punitive damages and attorney's fees must be dismissed.

In conclusion, the Court grants Shaw's motion for summary judgment on all of the claims Premier has asserted, and Shaw is dismissed from this action.

E.  <u>Premier's Motion for Partial Summary Judgment Against Defendants Herubin and Steele</u>

Premier moves for summary judgment on Counts I, III, and IX, asserted against Defendants Herubin and Steele.  The Court has already concluded that Premier has failed to offer sufficient evidence of an imminent and substantial endangerment at the Mendel Site and, accordingly, Premier's motion for summary judgment as to Count III is denied.

1.  *RCRA claim (solid waste) (Count I)*

The Court has already determined that the carpet selvedge at the Mendel Site constitutes a "recovered material" under Georgia law.  Premier argues that the carpet selvedge was being accumulated speculatively and, therefore, Defendants

Herubin and Steele were required to comply with solid waste handling regulations.

See Ga. R. & Regs. § 391-3-4-.04(7)(b).  To demonstrate that a recovered material

was not being accumulated speculatively, a person accumulating the material must

show

> that there is a known use, reuse, or recycling potential for the
> material, that the material can be feasibly sold, used, reused, or
> recycled and that during the preceding 90 days the amount of
> material that is recycled, sold, used, or reused equals at least 60
> percent by weight or volume of the material received during
> that 90-day period and 60 percent by weight or volume of all
> material previously received and not recycled, sold, used, or
> reused and carried forward into that 90-day period.

Ga. R. & Regs. R. 391-3-4-.04(7)(c).  Premier argues that Defendants Herubin and

Steele are unable to demonstrate that the carpet selvedge brought to the Mendel

Site was processed or reused in any manner, and Premier contends the carpet

selvedge was simply stored or discarded.  Premier also contends that Defendants

have not offered any documentation that at least 60% of the carpet selvedge was

processed or removed within 90 days.

Defendants Herubin and Steele contend that they offered documentation

indicating that approximately 58 containers of carpet selvedge were moved off-

site.  (Defs.' Am. Resp. to Pl.'s Statement of Material Facts ¶ 35.)  It is not clear

from the record before the Court where these 58 containers were sent or how they

were used.  More importantly, it is unclear the timing of the transfer of these

containers and the percentage of carpet selvedge actually processed.  Defendants Herubin and Steele contend that they do not know where Nycore's records – which presumably would show how much carpet selvedge, if any, was processed and whether it was processed or removed within 90 days – are currently located.

On the record before it, the Court concludes there are disputed issues of fact with respect to whether Defendants Herubin and Steele speculatively accumulated carpet selvedge at the Mendel Site and whether the carpet selvedge at the Mendel Site, while in Nycore's possession, constituted a "recovered material" or solid waste.  Because issues of material fact remain unresolved, Premier's motion for summary judgment against Defendants Herubin and Steele on Count I is denied.

2. *Negligence Per Se (Count IX)*

Premier argues that because Defendants Herubin and Steele violated the RCRA, they were negligent *per se*.  Because the Court has denied Premier's motion for summary judgment against Herubin and Steele with respect to Counts I and III, the RCRA claims Premier has asserted against these Defendants, the Court must also deny Premier summary judgment with respect to its claim for negligence *per se*.  Premier will need to establish at trial whether Herubin and Steele violated the RCRA and, if so, whether such a violation constitutes negligence *per se*.

F.      Premier's Motion for Partial Summary Judgment Against Shaw

Having granted Shaw's motion for summary judgment on all of the claims Premier asserted against Shaw, and for the reasons discussed above, the Court necessarily denies Premier's motion for summary judgment on those claims.

G.      Claims Remaining In this Action for Trial

The claims now remaining in this action for trial are Premier's claims against Defendants Herubin and Steele for RCRA violations related to solid waste (Count I) and for negligence *per se* (Count IX).  Because Herubin and Steele did not move for summary judgment on Premier's RCRA claim for imminent and substantial endangerment (Count III), that claim technically remains in this action, although the Court, in granting Shaw's motion for summary judgment, has already found that no genuine issue of material fact exists with respect to that claim. Defendants Herubin and Steele are invited to move for summary judgment on Count III.

Also remaining, of course, are Premier's claims against Defendant EXL, including for breach of contract.  Because EXL has been found in default, Premier may move for default judgment against EXL on all claims.

III.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Premier Associates, Inc.'s

Motion for Clerk's Entry of Default Against Defendant EXL Polymers, Inc. [100]

is **GRANTED**.  The Clerk of Court is **DIRECTED** to issue an entry of default

against Defendant EXL Polymers, Inc.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the

Pleadings as to Defendant Shaw Group, Inc.'s Counterclaims [102] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Judgment on the

Pleadings as to the EXL Defendants' Counterclaims [103] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Shaw Group, Inc.'s Motion

for Summary Judgment [106] is **GRANTED**.  Defendant Shaw Group, Inc. is

**DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary

Judgment Against Defendants Herubin and Steele [109] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary

Judgment Against Defendant Shaw [110] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave to File

Corrected Brief [113] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Stephen Steele's Motion for

Leave to File a Response [150] is **GRANTED**.


**SO ORDERED** this 19th day of July, 2010.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE